IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| WHITEBOX CONVERTIBLE ARBITRAGE PARTNERS, L.P., *et al.*, | * | |
| Plaintiffs, | * | |
|  | * | Civil Action No.: RDB-07-1064 |
| v. | * | |
| GENERAL ELECTRIC CAPITAL CORPORATION, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This action arises out of General Electric Capital Corporation's ("GECC") acquisition of Trustreet Properties, Inc. ("Trustreet"). Whitebox Convertible Arbitrage, L.P., Whitebox Diversified Convertible Arbitrage Partners, L.P., and HFR RVA Combined Master Trust (collectively "Plaintiffs" or "Whitebox") have a filed a three-count Complaint in this Court against GECC, TSY-FF Acquisition Company Inc. ("Merger Sub"), FF-TSY Holding Company Inc. ("Holding Company"), and Trustreet (collectively "Defendants"). Plaintiffs are private investment funds or unit trusts that purportedly held 632,331 shares of 7.5% Series C Redeemable Convertible Preferred Stock ("Series C Preferred Stock") in Trustreet. The Series C Shares were ultimately liquidated as part of GECC's acquisition of Trustreet. As a result, Plaintiffs seek a declaratory judgment that either Holding Company or, in the alternative, GECC is obligated to continue making dividend payments to Plaintiffs until February 25, 2009. Plaintiffs also seek damages based on theories of breach of contract and tortious interference with contract.

Pending before this court is Defendants' Motion to Dismiss (Paper No. 11) for failure to state a claim upon which relief can be granted.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  The issues have been fully briefed and there is no need for a hearing.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated below, Defendants' Motion to Dismiss is DENIED.

## BACKGROUND

Bound to accept all well-pleaded allegations as true, this Court has taken the following factual allegations largely from Plaintiffs' Complaint.

**I.     The Articles Supplementary**

Before Trustreet was acquired by GECC on or about October 30, 2006, Plaintiffs in this case held 632,331 shares of Series C Preferred Stock issued by Trustreet, a Maryland corporation. (Compl. ¶¶ 14, 26.)  A document titled the Articles Supplementary Establishing and Fixing the Rights and Preferences of 7.5% Series C Redeemable Convertible Preferred Stock ("Articles Supplementary") was the governing document that fixed the terms and conditions of the Series C Preferred Stock. (*Id.* ¶ 13.)  The first paragraph of the Articles Supplementary states as follows:

> The description of the 7.5% Series C Redeemable Convertible Preferred Stock, including the preferences, conversion and other rights, voting rights, restrictions, limitations as to dividends, qualifications, and terms and conditions of redemption thereof, as set by the Board, are set forth in these Articles Supplementary.

(*Id.*; Compl. Ex.1 at 1.)

Section 3 of the Articles Supplementary provides for the payment of quarterly dividends to the holders of Series C Preferred Stock at a rate of 7.5% per annum. (Compl. ¶ 16.)  The

dividend was a percentage of the "liquidation preference," which was $25.00 a share. (*Id*.) Section 5 of the Articles Supplementary provides that the Series C Preferred Stock could not be redeemed before February 25, 2009,[1] at which point they could be redeemed for $25.00 a share, plus accrued and unpaid dividends. (*Id*. ¶ 17.)

Section 4 of the Articles Supplementary addresses Series C Preferred Shareholders' liquidation preferences. It provides that "[u]pon any voluntary or involuntary liquidation, dissolution or winding-up of affairs of the Corporation . . . the holders of Series C Preferred Stock then outstanding shall be entitled to be paid . . . a liquidation preference of $25.00 a share." (*Id.* ¶ 18.; Compl. Ex. 1 at 6.) Certain events, however, were not to be considered a liquidation under Section 4:

> "[t]he consolidation or merger of [Trustreet] with or into any other entity, or the sale, lease, transfer or conveyance of all or substantially all of the property or business of [Trustreet], shall not be deemed to constitute a liquidation, dissolution or winding-up, voluntary or involuntary, of [Trustreet]."

(*Id*., Compl. Ex 1 at 7.)

Section 7 of the Articles Supplementary details in several subsections the Series C Preferred Shareholders' conversion rights. (*See* Compl., Ex. 1 at 11 ("Holders of Series C Preferred Stock shall have the right to convert all or a portion of such shares into Common Stock, as follows.").) Section 7(e) preserves the conversion rights of Series C Preferred Shareholders in the event that Trustreet and another entity were involved in a "transaction," defined "without limitation" as any "merger, consolidation, statutory share exchange, self tender

---

[1] The parties agree that the exceptions to Section 5 are immaterial for the purposes of deciding the pending motion. (*See* Compl. ¶ 17; Defs.' Mem. Supp. Mot. Dismiss 3.)

offer for all or substantially all of the Common Stock, sale of all or substantially all of [Trustreet's] assets or recapitalization of the Common Stock." (Compl. Ex. 1 at 17.) Section 7(e) provides specifically as follows:

> If [Trustreet] shall be a party to any transaction [defined above], in each case as a result of which Common Stock shall be converted into the right to receive shares, stock, securities or other property . . ., each share of Series C Preferred Stock which is not converted into the right to receive shares, stock, securities or other property in connection with such [t]ransaction shall thereafter be convertible into the kind and amount of shares, stock, securities and other property . . . receivable upon the consummation of such [t]ransaction by a holder of that number of shares of Common Stock into which one share of Series C Preferred Stock was convertible immediately prior to such [t]ransaction . . .

(*Id*.) Plaintiffs contend that under Section 7(e), "Trustreet had an obligation to decline to enter into any merger, consolidation or sale of substantially all of its assets unless the transaction assured that the Series C Preferred [Shareholders] had certain conversion rights." (Compl. ¶ 19.) In support of this position, Plaintiffs point to the following language of Section 7(e):

> [Trustreet] shall not be a party to any [t]ransaction unless the terms of such [t]ransaction are consistent with the provisions of this subsection (e), and it shall not consent or agree to the occurrence of any [t]ransaction until [Trustreet] has entered into an agreement with the successor or purchasing entity . . . for the benefit of the holders of the Series C Preferred Stock that will require such successor or purchasing entity . . . to make provision in its articles of incorporation or other constituent documents to the end that the provisions of this subsection (e) shall thereafter correspondingly be made applicable as nearly as may reasonably be, in relation to any shares of stock or other securities or property thereafter deliverable upon conversion of the Series C Preferred Stock. The provisions of this subsection (e) shall similarly apply to successive [t]ransactions.

(Compl. Ex. 1 at 17-18.)

**II.     GECC's Acquisition of Trustreet**

On October 30, 2006, Trustreet announced that it had agreed to be acquired by GECC in a transaction valued at approximately $3 billion. (Compl. ¶ 20-21.)  The two entities entered into an Agreement and Plan of Merger, which provided for the following procedure: (1) either Trustreet would merge into Merger Sub, a subsidiary of GECC, or Merger Sub would merge into Trustreet, at the choice of GECC; (2) GECC could cause Trustreet, after the initial merger, to transfer all or substantially all of its assets and liabilities to a wholly-owned subsidiary; and (3) the surviving entity would be liquidated upon written notice to the Series C Preferred Shareholders. (*Id.* ¶ 21.)

Under the Agreement and Plan of Merger, on approximately February 21, 2007, Merger Sub adopted a document substantially similar to the Articles Supplementary.  (*Id.* ¶ 22.)   On approximately February 26, 2007, Trustreet was merged into Merger Sub.  (*Id.* ¶ 23.)  At the time of the merger, therefore, each shareholder of Trustreet's Series C Preferred Stock continued to have the same rights in the surviving entity as per Merger Sub's newly adopted Articles Supplementary.  (*Id.* ¶ 22.)  Also on or about February 26, 2007, Merger Sub transferred all or substantially all of its assets to Holding Company.  (*Id.* ¶ 22.)   Thereafter, on or about March 19, 2007, Merger Sub was dissolved.  (*Id.* ¶ 24.)   Plaintiffs allege that they were not provided notice of the dissolution, to which they were entitled as Series C Preferred Shareholders.  (*Id.*)  Merger Sub, at the direction of GECC, cancelled the Series C Preferred Stock and each holder was paid a $25.00 per share liquidation preference. (*Id.*)

Plaintiffs allege that, in substance, the acquisition process was "a consolidation or merger of [Trustreet] with or into any other entity, or the sale, . . . transfer or conveyance of all or substantially all of the property or business of [Trustreet]."  (*Id.* ¶ 25; Compl. Ex. 1 at 7.)

5

According to Plaintiff, Section 4 of the Articles Supplementary explicitly stated that such a transaction was not to be considered a liquidation. (Compl. ¶ 25.)  As such, Plaintiffs allege, "the payment to the Series C Preferred [Shareholders] was a premature, impermissible redemption, and the cancellation of the Shares was a violation of the holders' rights to two further years of dividends at 7.5% per annum." (*Id*.)   Thus, Plaintiffs allege that they are entitled to appropriate relief.

Based on the preceding facts, on April 25, 2007, Plaintiffs filed their Complaint in this Court.  In Count I, Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202 that either Holding Company or, in the alternative, GECC is obligated to continue making dividend payments to Plaintiffs until February 25, 2009.  In Count II, Plaintiffs seek monetary damages for breach of contract against Holding Company or, in the alternative, GECC, as well as Trustreet and Merger Sub.  In Count III, Plaintiffs seek monetary damages for tortious interference of contract against GECC.

On May 16, 2007, Defendants filed the pending Motion to Dismiss. (Paper No. 11.)  On June 15, 2007, Plaintiffs filed a response (Paper No. 14)  and, on June 29, 2007, Defendants filed a reply.  (Paper No. 15.)

## STANDARD OF REVIEW

Defendants seeks to dismiss Plaintiffs' action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan*

*Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States recently explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).   Nonetheless, the complaint does not need  "detailed factual allegations" to survive a motion to dismiss.  *Id.* at 1964.  Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.  Thus, a complaint must only contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

## DISCUSSION

**I.     Counts I and II: Declaratory Judgment and Breach of Contract**

For the purposes of the pending Motion to Dismiss, Counts I and II differ only insofar as the remedy that each Count requests is different.  In Count I, Plaintiffs seek a declaratory judgment that the Defendants are obligated to continue making quarterly dividend payments to Plaintiffs until February 25, 2009.  In Count II, purely in the alternative, Plaintiffs seek damages for the alleged breach of contract.  The legal basis for each request for relief, however, is largely the same.  In both Counts, Plaintiffs support their request for relief based on Defendants' alleged

violation of the provisions contained in the Articles Supplementary.  Indeed, in their submissions to this Court, neither party has differentiated between the Counts in their legal arguments.  As such, this Court will jointly determine whether either Count states a claim upon which appropriate relief, whether it be declaratory or monetary, may be granted.

### A.     Terms of the Articles Supplementary

#### 1.      Contractual Provisions

Maryland law requires the objective interpretation of contracts.  *Holland v. Psychological Assessment Res.*, 482 F. Supp. 2d 667, 673 (D. Md 2007); *see Cochran v. Norkunas*, 919 A.2d 700, 710 (Md. 2007) (collecting supporting cases).  "Clear contractual language will 'govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding.'"  *Holland*, 482 F.Supp 2d at 673 (citing *Slice v. Carozza Prop., Inc.*, 137 A.2d 687, 693 (Md. Ct. Spec. App. 1958)).  The initial determination as to whether a contract is ambiguous is a matter of law, as is the interpretation of unambiguous terms.  *Id.*  The terms of the contract are ambiguous when "a reasonably prudent person in the position of the parties" might find the terms "susceptible to more than one meaning."  *Id.* (citing *Auction & Estate Reps., Inc. v. Ashton*, 731 A.2d 441, 446 (Md. Ct. Spec. App. 1999)).  In this case, Defendants argue that the terms of the Articles Supplementary are unambiguous and that neither the initial merger of Trustreet into Merger Sub nor the subsequent dissolution and liquidation of Merger Sub violated the terms of the contract.

Defendants contend that the subsequent liquidation of Merger Sub did not violate Section 4 of the Articles Supplementary.  Upon liquidation, the liquidation preference of $25.00 was

8

paid to the holders of Merger Sub Series C Preferred Stock, as required by Section 4 of the Articles Supplementary of Merger Sub, which was "substantially identical to the Articles Supplementary of Trustreet."[2]  (Compl. ¶ 22.)  Plaintiffs do not appear to take issue with Defendants' claim.  (*See* Compl. ¶ 24 ("Merger Sub, at the direction of GECC, cancelled the Series C Preferred Shares and paid each holder the $25[.00] liquidation preference per share.").)

Defendants further contend that Section 7(e), which details Series C Preferred Shareholders' conversion rights, was not breached when Trustreet was merged into Merger Sub. They claim that Section 7(e) applies only to transactions where Common Stock, but not Series C Preferred Stock, is converted into the right to receive "shares, stock, securities or other property." (Compl. Ex. 1 at 17.)   Defendants contend that Section 7(e) preserves the conversion rights of the Series C Preferred Stock in the aforementioned situation alone.  (*Id.*)

Defendants acknowledge that Section 7(e) applied to the merger of Trustreet and Merger Sub because, although Common Stock was converted, Series C Preferred Stock remained outstanding.  Defendants contend, however, that Series C Preferred Shareholders maintained the same conversion rights in Merger Sub after the merger as they had before the merger.  Plaintiffs again do not appear to take issue with Defendants' claim.  (*See* Compl. ¶ 22 ("Merger Sub adopted Articles Supplementary substantially identical to the Articles Supplementary of Trustreet.  This was done so that holders of the Series C Preferred [Stock] of Trustreet would become holder of the Series C Preferred [Stock] of Merger Sub."); Pls.' Memo. Opp. 4 ("Merger

---

[2] Plaintiffs do not allege that the provisions of the Articles Supplementary of Merger Sub were at all different than the Articles Supplementary of Trustreet, which was provided as a exhibit to the Complaint.  This issue, however, may be pursued further in discovery, and Plaintiff may ultimately demonstrate otherwise.

Sub issued Series C Preferred Stock that replaced the Trustreet Series C Preferred [Stock] on the same terms.").)

Defendants assert, moreover, that Section 7(e) had no application to the subsequent liquidation of Merger Sub because, unlike the initial merger, both Common Stock and Series C Preferred Stock were converted into the right to receive cash. (Defs.' Reply Memo. 6.) However, there has been no factual record developed with respect to this issue. In addressing Defendants' Motion to Dismiss, any inferences drawn from the Complaint must be made in a light most favorable to Plaintiffs. Accordingly, although Defendants may certainly develop this argument in discovery, this assertion does not form an adequate basis to grant Defendants' Motion to Dismiss.

The thrust of Plaintiffs' Complaint is that, "[i]n substance, the holders of Series C Preferred [Stock] suffered a premature, contractually prohibited redemption . . . . [T]he Defendants cancelled the Shares, made a premature payment, purported to avoid two years of dividend payments at 7.5% per annum, and breached or caused a breach of [Plaintiffs'] contractual rights." (Compl. ¶ 1 (emphasis added).) In their Opposition to Defendants' Motion to Dismiss, Plaintiffs argue as follows:

> [T]he move of Trustreet to Merger Sub was only one step of the transaction laid out in the Agreement and Plan of Merger. The transaction to which [D]efendants agreed, and which ultimately was executed—the "Plan" in the plan of merger—was a consolidation of Trustreet into the GECC, a sale of the business to GECC, in a way that expressly included making Trustreet and its brief successor disappear.

(Pls.' Memo. Opp. 7.) Thus, Plaintiffs argue that the transaction violated the terms of Section 4 and Section 7(e) of the Articles Supplementary and also, in substance, Section 5, which

10

prohibited a redemption of Plaintiffs' shares before February 25, 2009.  Otherwise, the Articles Supplementary would protect Plaintiffs (and all other Series C Preferred Shareholders) from "nothing at all: an acquirer could merely create a shell corporation, merge Trustreet into it, move assets out, and liquidate the shell, thereby easily creating a transfer of the business that triggers the liquidation preference but serves no other business purpose." (*Id*. at 7-8.)  Plaintiffs further contend that "only [their] reading [of the Articles Supplementary] is consistent with other sections . . . that protect the investor, and only [their] reading is what could be reasonably expected among investors in the public marketplace." (*Id*. at 8 (citing *Cochran v. Norkunas*, 919 A.2d at 710).)  Plaintiffs' factual contention that the subject transaction was essentially a redemption is more than conclusory and is sufficient to satisfy Rule 8(a)(2) of the Federal Rules of Civil Procedure.

Defendants argue that neither the merger nor the liquidation was a redemption, and the cumulative effect they had on the Series C Preferred Shareholders, including Plaintiffs, cannot be interpreted as a redemption where the contract did not call for it.  There may certainly be support for Defendants' legal position after discovery in this case.  This Court, however, cannot determine at this early stage in the litigation that Plaintiffs' claim must fail as a matter of law based on the terms of the Articles Supplementary alone.  Thus, Plaintiffs' allegations in the Complaint cannot be resolved without a factual record and therefore they are entitled to discovery.  More importantly, Plaintiffs allege in the Complaint that they were not provided notice of Merger Sub's dissolution, to which they were entitled as Series C Preferred Shareholders.  (Compl. ¶ 24.)  This allegation, largely ignored in Defendants' Motion to Dismiss, clearly requires the development of a factual record through discovery in this case.

## 2. Doctrine of Independent Legal Significance

According to Defendants, the merger and the subsequent liquidation were two "separate and discrete legal events." (Defs.' Mem. Supp. Mot. Dismiss 6.) Defendants therefore ask this Court to apply the doctrine of independent legal significance to the contract in question. The doctrine states simply that an "action taken under one section of [the] law is legally independent, and its validity is not dependent upon, nor to be tested by the requirements of, other unrelated sections under which the same final result might be attained by different means." *Orzeck v. Englehart*, 195 A.2d 375, 378 (Del. 1963). Defendants' argument under this theory is that, under this doctrine, the merger and subsequent liquidation cannot together be deemed a redemption.

Plaintiffs, in response, note several potential flaws in Defendants' argument. First, the doctrine has been traditionally used to interpret statutory provisions and not contractual provisions. Although Defendants point to one case that has in fact applied the doctrine to interpret a governing corporate document, that case was based in large part on the similarities between the language in the governing document at issue in the case and the statutory language of the Delaware General Corporation Law. *See Warner Communications Inc. v. Chris-Craft Industries, Inc.*, 583 A.2d 962, 968-70 (Del. Ch. 1989). Moreover, it appears that the transition of the doctrine as a tool of statutory interpretation to one of contractual interpretation is not firmly established. *Cf.* D. Gordon Smith, Independent Legal Significance, Good Faith, and the Interpretation of Venture Capital Contracts, 40 Willamette L. Rev. 825, 836-40 (2004) (stating that the *Warner* case "took a large step toward importing the doctrine of independent legal significance from its domain as a rule of statutory interpretation to the realm of contract

12

interpretation" and characterizing the decision as a "modern twist").

Second, this Court's research has not uncovered a single Maryland case referencing the doctrine. This case being one in which Maryland law governs, even if the doctrine were firmly established in Delaware law and also applied to contract law, it has clearly not yet been expressly adopted in Maryland. Although this Court has determined that "[w]ith respect to corporate governance issues, Maryland courts often look to Delaware caselaw," *Jolly Roger Fund LP v. Sizeler Property Investors, Inc*, No. Civ. RDB-05-841, 2005 WL 2989343, at *3 (D. Md. Nov. 3, 2005), this is not universally true. *See Werbowsky v. Collomb*, 766 A.2d 123, 143 (Md. 2001) (declining to adopt the Delaware approach to the demand requirement in shareholder derivative actions despite noting "the respect properly accorded Delaware decisions on corporate law").

The application of the doctrine of independent legal significance simply cannot be summarily determined by this Court at this stage in the proceedings so as to entitle Defendants to a dismissal of this action under Rule 12(b)(6). The application of this doctrine clearly requires a factual record to be developed in discovery. In sum, Plaintiffs' Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Accordingly, Defendants' Motion to Dismiss (Paper No. 11) is DENIED as to Counts I and II.

### B.     Duty of Good Faith and Fair Dealing

In their Response to the Defendants' Motion to Dismiss, Plaintiffs for the first time argue that Defendants violated the duty of good faith and fair dealing. Plaintiffs assert that the Defendants attempted in bad faith to manipulate the merger and subsequent liquidation in order to deprive Plaintiffs of their rights under the Articles Supplementary. (Pls.' Memo. Opp. 8.)

Plaintiffs' Complaint sufficiently contains this contention of bad faith.  As the Supreme Court recently noted, Plaintiffs' Complaint need not include "detailed factual allegations" to survive Defendants' Motion to Dismiss.  *Twombly*, 127 S. Ct. at 1964.

Under Maryland law, a negotiated contract contains an implied duty of good faith and fair dealing.  *See Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 182 (4th Cir. 2000) (citing, *inter alia*, *Food Fair Stores, Inc. v. Blumberg*, 200 A.2d 166, 173-74 (Md. 1964) ("In every contract there exists an implied covenant that each of the parties thereto will act in good faith and deal fairly with the others.")).  Nonetheless, in *Mount Vernon Props., LLC v. Branch Banking & Trust Co.*, 907 A.2d 373, 381 (Md. Ct. Spec. App. 2006), the Court of Special Appeals of Maryland determined that Maryland law does not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing.  The Court of Special Appeals found persuasive this Court's analysis in *Swedish Civil Aviation Admin. v. Project Management Enterprises, Inc.*, 190 F. Supp. 2d 785(D. Md. 2002), in which this Court wrote that the duty of good faith and fair dealing "is merely part of an action for breach of contract, . . . and so, because [another count] already states a claim for breach of contract, [the count purporting to state a claim for breach of the implied duty of good faith] does not state a different claim . . . ."  *Id*. at 794.  More recently, in *Holland*, this Court again stated that "[t]he allegations of breach of the covenant of good faith and fair dealing are . . . subsumed within the breach of contract claim . . . and will not proceed as an independent cause of action."  482 F. Supp. 2d at 680.

Thus, Plaintiffs' argument with respect to the duty of good faith and fair dealing cannot be independently dismissed and will proceed along with the breach of contract claim alleged in

Count II.

## II.     Count III: Tortious Interference with Contract

While the parties have not addressed the allegations in Count III in their submissions, this Court once again notes that Plaintiffs' Complaint satisfies the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.  In Count III, Plaintiffs allege that Defendant GECC tortiously interfered with Trustreet's ability to abide by the terms of the Articles Supplementary.  In *Macklin v. Robert Logan Assocs.*, 639 A.2d 112 (Md. 1994), the Court of Appeals explained that a claim for tortious interference with contract has two general manifestations.  *Id.* at 117 (citing *Natural Design, Inc. v. Rouse Company*, 485 A.2d 663, 674 (Md. 1984)).  The first manifestation of the tort describes the situation where a "third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract."  *Id.*  The second manifestation describes the situation where a third party, "absent an existing contract, maliciously or wrongfully infringes upon an economic relationship."  *Id.*

In this case, Count III clearly falls in the former category.  Plaintiffs allege that "GECC caused Trustreet and its successors to breach their contractual obligations to [P]laintiffs." (Compl. ¶ 40.)  Therefore, although the existence of a breach under Count II may be a condition precedent to recovery under Count III, Plaintiffs will have the opportunity to develop that claim further in discovery.  Moreover, although Defendants moved to dismiss the entire Complaint, they have not specifically mentioned Count III in their submissions to this Court.  Defendants' Motion to Dismiss Count III, which is directed solely at GECC, is therefore DENIED.

## CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (Paper No. 11) is DENIED.  A separate Order follows.

/s/
Richard D. Bennett
United States District Judge

Dated: February 6, 2008